[Civ. No. 724.  First Appellate District.—March 9, 1910.]

## LOMA PRIETA LUMBER COMPANY, Appellant, v. MARY E. HINTON, Respondent.

UNRECORDED BUILDING CONTRACT—CONSTRUCTION UPON PERCENTAGE BASIS—LIABILITY OF OWNER FOR MATERIAL—FINDING AGAINST EVIDENCE—REVERSAL.—Where the evidence shows that the erection of a building costing $8,000 was made without a written contract, upon a basis of percentage to be paid to the architect and to a superintendent of construction, employed by the owner, leaving all claims for labor and materials to be paid for by the owner, it is held that a finding in an action for mill work furnished toward the erection of the building, that it was not furnished at the instance and request of the owner, is against the evidence, and requires a reversal upon appeal.

ID.—AGENCY FOR OWNER.—In such a state of the evidence, the owner is liable to the plaintiff as matter of law, for the reason that the architect and superintendent were her agents in the purchase of the materials furnished for the building and used in the construction thereof, including the materials sued for.

ID.—ABSENCE OF SUBSTANTIAL CONFLICT.—*Held*, that the evidence of the owner is not of sufficient dignity to create a substantial conflict in the evidence showing the liability of the owner to plaintiff.

ID.—REASONABLENESS OF CONTRACT PROVED.—An oral contract to construct a building for a lump sum of $8,000 is out of the ordinary way of doing business; but if the building was to be constructed upon a percentage basis, as shown by the testimony of the architect and superintendent, it was reasonable and consistent with each and every act of the parties done in pursuance thereof, and in connection with the building.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.  Thos. F. Graham, Judge.

The facts are stated in the opinion of the court.

Albert H. Elliot, for Appellant.

James G. Maguire, and Joseph Leggett, for Respondent.

COOPER, P. J.—This action was brought to recover the sum of $1,845.60 for mill work furnished by plaintiff, to be

used and which was used in the construction of a building
for the defendant. The court filed findings, upon which
judgment was entered in favor of defendant. This appeal
is from the judgment and the order denying plaintiff's motion
for a new trial.

There is no controversy as to the following facts: That the
building was constructed for defendant; that the cost of the
building exceeded $1,000, and that there was no contract in
writing, and no contract of any kind filed for record; that
one Bugbee was the architect who drew the plans and speci-
fications, and one Johnson was the superintendent in personal
charge of the construction of the building; that the mill work
was furnished by plaintiff and was of the reasonable value
of $1,845.60; that plaintiff has not been paid for said mill
work; that no lien was filed against the building.

The court found in effect that plaintiff did not furnish the
mill work to defendant at her instance or request, and upon
this finding judgment was ordered in favor of defendant. It
is here claimed that this finding is not supported by the evi-
dence, and that is the main question, and, in fact, the only
question that need be considered in this case.

On behalf of the plaintiff, Bugbee testified that he drew
the plans and specifications for the building, and that he was
to receive ten per cent on the total cost of the building for
his services in drawing the plans and superintending the
construction; that he informed defendant that he would have
to employ a superintendent to take charge of the hiring of
the labor and purchasing the materials and to let the sub-
contracts, and that defendant would have from time to time
to advance the money as needed to pay for such labor and
materials; that to this the defendant consented, and that the
witness, in pursuance of such arrangement, employed John-
son as superintendent, agreeing to pay Johnson one-half of
the ten per cent which he was to receive, and that either
himself or Johnson purchased the necessary materials, em-
ployed the labor, let the subcontracts and paid for the same
with moneys advanced by defendant as needed; that he told
defendant that he thought the building could be constructed
for a total cost of $8,000, but afterward several changes were
made at the request of defendant, such as putting in basins
and wardrobes in each room, which considerably increased

the cost. Johnson testified on behalf of the plaintiff that he was the superintendent in charge of the building, and that the contract or arrangement was made in his presence substantially as testified to by Bugbee; that he ordered the labor and materials from time to time; that plaintiff furnished the mill work at his request; that he had every laborer sign a payroll, which was turned over to defendant, and that she gave the witness money to pay the men according to the payroll; that defendant would come on Friday or Saturday to look at the payroll and then go to the bank and get the money with which to pay the men, and then hand the money to the witness; that defendant did this fifteen or twenty times; that the witness kept a payroll in his own handwriting, from which he refreshed his memory, and that defendant paid the following items: November 10, $26.25; December 8, $34.95; January 26, $12.50; December 19, $72.95; February 9, $169.25; February 16, $361.60; February 23, $207.20; March 2, $396.95; March 9, $254.75, which said items were on the payroll for labor. The witness continued from such payroll to give other items for labor, plumbing and other materials which were furnished for the building and used in the construction thereof. He further testified that for getting the bills and the money to pay them promptly two per cent discount was allowed, and defendant desired to and did get such discount; that defendant went with witness to the bank and introduced him, and asked the bank to let witness have money from time to time on her orders, and that he did often go and get the money with which to pay the bills upon the orders given him by defendant; that the changes and extras in the building in deviation from the original plans as made from time to time added $2,000 to $2,500 to its cost.

If the above-quoted testimony is true the defendant is liable to the plaintiff as a matter of law, for the reason that Bugbee and Johnson were her agents in the purchase of the materials, which included the mill work.

Defendant's counsel further insist that the evidence offered by defendant shows that she made an oral contract with Bugbee, by the terms of which he was to construct the building as an independent contractor for $8,000. Defendant testified in her own behalf, and her statement of the contract is as follows: "I wish to say that he suggested the

$8,000 himself, and when I could get $5,000—the bank notified me that they had collected $5,000 insurance, and I went to Mr. Bugbee and asked him what we could do with that on the lot; he said for '$8,000 I could put you up a rooming house with sixty rooms,' and I said, 'A temporary building?' He said, 'Oh, no, a building that will last twenty years.' I said, 'I will see if the bank will let me have $3,000 more in addition and let you then know.' The bank allowed me the loan of $8,000—$3,000 in addition to what I had received from the insurance, and then I went to Mr. Bugbee and said we can get no more, and I had no more, and he said he could do it, and he began to excavate and got Mr. Johnson to excavate—not much excavating, it was more clearing away the bricks from the lot." The witness further said that Mr. Bugbee agreed to construct the building for $8,000; but in order to arrive at the truth we must examine her testimony as a whole.

In cross-examination she testified that she paid out $2,440 in addition to the $8,000 for the construction of the building, and also $300 additional for clearing the lot. She also admitted that she paid the following amounts for material and labor on the building, to wit: Plumbing, $1,000; the Linwood Company, $600; painting, $150; hardware, $154; Christian Lumber Co. bill, $150; electric wiring, $23; that the roofing was $63, of which she had paid $40 and was paying $10 a month on that. She further testified that there was a balance of $300 due for lumber, which she had agreed to pay; and further as follows:

"Mr. Bugbee always promised to give me an accounting, but he went away without doing it.

"Q. What do you mean by that?   A. I wanted to know how much it was.

"Q. You wanted to know how much the labor bill was? A. Yes, sir.

"Q. And Mr. Bugbee said he would give you an accounting?   A. Yes, sir.

"Q. How many times did you ask him for such an accounting?   A. I would remind him and he would put me off. . . .

"Q. In the talk with Mr. Bugbee concerning the construction of this building what was said about his compensation?

12 Cal. App.—49

A. He said that $8,000 would cover everything. He said he could contract for the building, but he didn't like to sign a contract because he was doing all his work this way, and he had been able to save one woman a thousand dollars by not having a contract.

"Q. That is, by not letting out a contract to a contractor? A. By not having a contract he was able to do the work cheaper for the owner by not having a contract.

"Q. By not having a contract with whom? A. With the owner—the person that was building.

"Q. He told you that by not having a contract with the owner that in another case he had saved the owner $1,000? A. Yes, sir.

"Q. Because he said he could buy the materials cheaper by paying cash? A. Yes, sir.

"Q. What was said by you or him about paying Mr. Bugbee for his services? A. There was nothing said.

"Q. What was agreed upon or what was determined upon between you and Mr. Bugbee as to what was to be paid for his services? A. He said that he could make it all in the commissions that he was to have.

"Q. The commissions from whom? A. The people he was dealing with—buying from—by paying cash he knew how and when to buy, and so on, and that would cover everything.

"Q. As I understand you, he was to buy the material? A. Yes, sir.

"Q. And he was to get his pay by the commissions from these people that sold the material to him? A. Yes, sir."

It was further shown that the defendant, in her verified answer filed by her in a prior suit brought in the superior court by Johnson against her relative to the same building, stated in said answer as follows: "That in or about the month of November, 1906, M. G. Bugbee individually on his own behalf entered into an agreement with the defendant, by which M. G. Bugbee personally and individually agreed to furnish plans for and erect and construct the building mentioned in plaintiff's complaint for the defendant at a gross cost not exceeding the sum of $8,000." The witness was further asked and answered as follows:

"Q. Did Mr. Bugbee agree with you that if the building should cost less than $8,000 he was to pocket the difference between the building cost and $8,000? A. No, sir; he told me about how he had treated others, and I supposed he had the same benevolent intentions toward me, but he didn't say, we didn't have any agreement that if it cost less than $8,000 that either he or I should have what was left.

"Q. It wasn't your intention that if the building cost $6,000 that Mr. Bugbee was to get the difference? A. He said he saved an owner in one case a thousand dollars—he might be able to do it for somebody else."

Mrs. Moody, the daughter of defendant, testified as to the contract as follows: "In my presence he told my mother that he could put up the house for $8,000, and I turned to him and said, 'Mr. Bugbee, does that include everything?' and he said, 'Yes.' I said, 'Your fees and everything?' and he said, 'Yes, that includes everything.' I don't remember anything more that was said."

In cross-examination Mrs. Moody said that in the conversation between her mother and Mr. Bugbee nothing was said about Bugbee's compensation. The following questions were asked her and answered as follows:

"Q. Then at that conversation between your mother and Mr. Bugbee you did discuss the question of Mr. Bugbee's fees? A. No, sir, the price of the building.

"Q. I will ask you at that time was anything said about Mr. Bugbee's compensation? A. No, sir.

"Q. Nothing was said about it? A. No, sir.

"Q. Nothing at all was said about what Mr. Bugbee was to get out of this? A. No, sir.

"Q. What was Mr. Bugbee to get out of it for building the building? A. I do not know.

"Q. Didn't you just testify, Mrs. Moody, that Mr. Bugbee said that the $8,000 would include his compensation? A. Yes, sir, but I didn't know how much that was to be.

"Q. Then there was something said about Mr. Bugbee's compensation? Didn't you ask him if it also included his fees? A. No, sir."

When we view the above evidence on the part of the defendant we do not think it of sufficient dignity to raise a conflict. A contract is the meeting of minds upon and agree-

ment to a definite thing. The contract as stated by the architect and by the superintendent is reasonable and consistent with each and every act of the parties done in pursuance thereof and in connection with the building. An oral contract for $8,000 is out of the ordinary way of doing business. There was nothing said about the time or the amount of the payments, or the manner in which they should be made. If such a contract was made, defendant would not have any concern with the payment of the bills except in so far as to prevent liens upon her property. She would not have to get an accounting from Bugbee as to the bills paid. She would not have sworn in a different case relating to the same contract that the agreement was that Bugbee would build for "not to exceed $8,000." The defendant testified that Bugbee was to get his compensation by charging and collecting a commission from the materialmen. That is wholly inconsistent with the agreement to pay Bugbee $8,000 to construct the building; and not only this, but the benefit of the discount on the bills was received by the defendant as they were paid by her or under her direction.

The testimony of Mrs. Moody, the daughter, is equally unsatisfactory. She does not state anything said about the time, manner or amount of payments; and while she testified in direct examination that she asked Bugbee if the $8,000 included "his fees and everything," in almost the next breath in cross-examination she said that nothing was said about Bugbee's compensation; that she did not ask him if the $8,000 included his fees. If Bugbee had been the original contractor, he would have taken the receipts, had the benefit of the discounts on the bills, and retained the bills instead of their being receipted and given to the defendant. The defendant would have taken receipts from Bugbee for payments on the contract, but no such receipts were produced. The acts and conduct of the parties speak with more force than bare words. The question cannot be answered by the defendant merely saying, "The contract was $8,000." We look for the truth to the facts and the entire history of the transaction. No reasonable person could read the testimony in this record and have a doubt remaining as to the fact that the building was constructed for the defendant on

a percentage basis, and that she was responsible for the materials purchased and used in its construction.

The judgment is reversed.

Kerrigan, J., and Hall, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 29, 1910.